THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH W. PERKINS, Defendant-Appellant.

(No. 11819;

Fourth District—May 31, 1973.

James R. Streicker, of Defender Project, of Chicago, (Harvey M. Grossman, Senior Law Student, of counsel,) for appellant.

Basil G. Greanias, State's Attorney, of Decatur, (James R. Coryell, Assistant State's Attorney, of counsel,) for the People.

6

Mr. JUSTICE SIMKINS delivered the opinion of the Court.

On April 15, 1970, a jury returned a verdict finding defendant-appellant Joseph W. Perkins guilty of the crime of burglary. Trial was had in the Circuit Court of Macon County. He was placed on probation for a period of two years, the order being entered on April 29, 1970. Among other conditions imposed was the specific order that defendant "* * * be at * * * residence between the hours of 11:00 P.M., and sunrise, each and every night, unless he has the consent of the probation officer to do otherwise."

On December 9, 1971, the probation officer filed a Report of Violation of Probation setting forth that the Order of Probation was conditioned on the aforesaid curfew restrictions and upon defendant's refraining from violation of the criminal laws of the State of Illinois. The report specifically charged that on December 5, 1971, defendant had committed the offenses of Burglary and Aggravated Battery, and that on the same date he had violated the curfew provisions of the Order by being away from his residence at 5:02 A.M. Counsel was appointed for defendant. Defendant admitted the curfew violation, but asked for hearing on the other charges of the Report of Violation.

Officer Roland Butler of the Decatur Police Department testified that on the morning of December 5, 1971, at about 5:00 A.M., while patrolling in his squad car, observed a National Van Lines furniture van parked on Williams Street with the rear doors opened. There was a 1957 white Ford parked behind it. Butler stopped and observed furniture pads in the back seat of the Ford. He then observed an individual some two blocks away who appeared to be watching him and who suddenly started running west on Williams Street. Butler pursued in his squad car and while chasing the suspect sent a radio message giving a description of the suspect and the direction in which he was heading. When he first observed the suspect he saw the upper half of his face "* * * from his nose up". He testified that he had occasion to observe the rest of the suspect's person as he was chasing him and positively identified the defendant during the hearing. He testified that the man who fled had on a dark jacket, dark trousers and no hat. He was unable to apprehend the suspect and returned to the van and the white Ford. At this juncture, Officer Steve Puckett of the Decatur Police Department joined Butler. While they were checking the car out, the defendant approached and stated that the white Ford belonged to him and gave the officers his name. Butler testified that at this moment he was not too sure that the defendant was the suspect whom he had previously pursued, but noticed that the defendant's hair was cut the same way as the person whom he had initially seen. In response to questioning, the defendant

stated that his car had been loaned to a Robert Lewis. Later he said he had loaned the car to a Robert Williams. He told the officers that he did not know where this person lived. Butler had noted that the suspect had worn a dark jacket which length was between the hip and knee, dark trousers and no hat. Officer Puckett then called Butler's attention to the heel of a shoe lying on the ground behind the van and in front of the white Ford. The defendant had a heel missing on his right shoe. It appeared to Butler that the heel would match defendant's shoe and informed Perkins he was under arrest for investigation of burglary. Perkins started to run, hit Officer Puckett in the chest and knocked him against the car. Puckett and Butler wrestled the defendant to the ground and were assisted by Leroy Taylor, the owner of the van, in subduing the defendant and in placing him in handcuffs. Subsequently the officers determined that the heel was the heel of defendant's shoe. The license on the defendant's car was found to have been issued to a 1960 vehicle owned by one Lugene Walter. Access to the van had been gained by unscrewing a locking swivel on the rear doors. In defendant's car were 29 furniture pads and a fire extinguisher which had been removed from the van and laying beside the white Ford was a lug wrench which had been taken from the van.

Officer Puckett's testimony as to occurrences after his arrival at the scene corroborated the testimony of Butler.

The defendant testified in his own behalf; said that he had loaned the car to one Robert Lewis Williams at about 10:30 on the preceding night. Defendant further testified that he was in his own residence between 11:00 o'clock of the preceding night and 4:45 A.M., on the morning of December 5, 1971. He testified that he had fallen asleep on the couch, awakened at 4:45 A.M., and went out to see if he could find his car. He did not know where Robert Lewis Williams presently lived stating, "He lives east, but I don't know the exact address." Williams was not called as a witness. He said that his striking of Officer Puckett was accidental.

■■ If identification testimony is vague, doubtful and uncertain, it cannot support a conviction. *People v. Gardner*, 35 Ill.2d 564, 221 N.E.2d 232; *People v. Coulson*, 13 Ill.2d 290, 149 N.E.2d 96.

In *People v. Kincy*, 72 Ill.App.2d 419, 219 N.E.2d 662 the defendant was convicted of robbing a dry cleaning store. The attendant phoned the police, described the defendant as being tall, thin, brown-skinned and wearing a hat and jacket. She later identified the defendant who was wearing a hat and jacket. The police were led to defendant by the attendant's son. The defendant was found some 15 to 16 blocks from the scene of the robbery. The attendant identified the defendant by

saying that she recognized the jacket he was wearing. The defendant had an alibi supported by his mother. The court reversed the defendant's conviction because the person who had trailed the defendant did not testify. The proceeds of the robbery were not found on defendant's person and the attendant was unable to identify the defendant's face. *Kincy, supra,* is distinguishable because of the circumstantial evidence clearly pointing to the defendant's commission of the crime of burglary.

■■■ The State was required to establish defendant's commission of the burglary by a preponderance of the evidence. (*People v. Crowell,* 53 Ill.2d 447, 292 N.E.2d 721.) We agree that Officer Puckett's identification of defendant, if uncorroborated by other facts and circumstances, would have been too uncertain to support the finding. Here there is convincing corroborative evidence. While evidence of flight raises no legal presumption of guilt, it is a circumstance which may be considered in determining guilt. (*People v. Reed,* 103 Ill.App.2d 342, 243 N.E.2d 628.) Defendant's presence at the site of the burglary is circumstantially established by the location of the heel of his shoe. His car was there, and it contained the items of stolen property. He was wearing dark trousers, and had a haircut such as the individual initially observed and pursued by Puckett. The evidence is sufficient to establish, by a preponderance, defendant's commission of the burglary. The evidence here was not sufficient to establish that defendant was guilty of aggravated battery since there was no proof of bodily harm inflicted on either Puckett or Butler. There is sufficient evidence to support a finding of the lesser included offense of battery, though the trial judge made no such finding. As we have previously noted, the defendant admitted the curfew violation. The court did not err in revoking defendant's probation.

Defendant also urges that his sentence of 3 to 10 years is excessive and that the trial court erroneously took into consideration the act leading to revocation in imposing sentence on defendant's original conviction. ■■ We have examined the record and find that it does not support this contention. The sentence imposed is well within the statutory limits; the trial judge observed that he did not feel "* * * that any less sentence would not accomplish rehabilitation, would not accomplish correction."

Judgment affirmed.

CRAVEN, P. J., and TRAPP, J., concur.