(No. 51422.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. ROBERT LYKINS, Appellant.

*Opinion filed September 19, 1979.*

Theodore A. Gottfried, State Appellate Defender, and Richard J. Wilson, Deputy Defender, of Springfield, for appellant.

William J. Scott, Attorney General, of Springfield (Donald B. Mackay, Melbourne A. Noel, Jr., and Fred Montgomery, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

The defendant, Robert Lykins, was convicted of conspiracy, armed robbery and murder by a jury in Sangamon County. The judge imposed a sentence of 70 to 150 years. In the appellate court the State confessed error in the entry of the judgment on the conspiracy charge.

Section 8–5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 8–5) states that no person shall be convicted of both the inchoate and the principal offense, here armed robbery and a conspiracy to commit armed robbery. The appellate court reversed the conspiracy conviction but affirmed the conviction as to murder and armed robbery. (65 Ill. App. 3d 808.) In this court, as in the appellate court, Lykins has sought a review of his sentence. However, in this court Lykins, for the first time, has raised the issue of his trial counsel's conflict of interest. This issue was not raised at any time in the trial court and was not raised in the appellate court.

In the early morning hours of June 28, 1976, Kevin Smith, a gas station attendant, was robbed, severely beaten, stabbed five times, and repeatedly slashed across the throat. Lykins, David Anderson and Rene Eickmann were questioned several hours after the robbery but were not arrested. A short time later Lykins and Eickmann called an Illinois Bureau of Investigation agent, admitted the early morning robbery, and turned themselves over to the police.

Lykins gave an unrecorded statement to the police on the morning of June 28, and he gave another statement before a stenographer in the afternoon. In those confessions, Lykins admitted to fully participating in the planning and execution of the robbery but argued that he did not believe the plan would be carried out and he did not think, once the robbery began, that the attendant would be injured. According to Lykins, he, Anderson and Eickmann intended only to knock Smith unconscious. Lykins noted that Anderson actually planned the robbery and Anderson attacked the attendant. Lykins saw Anderson brutally attack and slash Kevin Smith, and he shouted in vain for Anderson to stop. Lykins at no time attempted to physically restrain Anderson; he did not call for help; and he shared in the proceeds of the robbery. After

describing the crimes, Lykins helped the police to recover various items used in the commission of the crimes.

Smith died several months after the assault, and though disputed at the trial, there was evidence that he died as a result of a blow to the head rather than the knife wounds. Lykins, testifying on his own behalf, admitted to his participation and admitted that he had hit Smith, but he argued that he hit him out of jealousy when Smith and Eickmann went into the back room. According to Lykins' testimony, there was no plan to seriously injure Smith. The oral and stenographic confessions were introduced, along with evidence that the robbery had been planned more than a week in advance. In addition, evidence of Lykins' good character was introduced and testimony was given showing that Lykins had attended special high school classes. The jury found Lykins guilty of conspiracy, armed robbery and murder. Anderson was found guilty in a separate trial, and prior to Smith's death Eickmann pleaded guilty to robbery. Only Lykins' appeal is before this court.

The first issue raised in this court is an alleged *per se* conflict of interest of Lykins' appointed trial attorney, Bruce Beeman. According to affidavits filed for the first time at the appellate court rehearing, partners of Beeman were special assistants to the Attorney General for condemnation matters. We hold that Lykins waived his right to raise the conflict issue by failing to raise it until the appellate court rehearing.

This court has repeatedly held that issues not raised at trial or in post-trial motions are waived. (*People v. Precup* (1978), 73 Ill. 2d 7, 16; *People v. Amerman* (1971), 50 Ill. 2d 196, 197.) This general rule applies to constitutional and nonconstitutional issues. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282; *People v. Long* (1968), 39 Ill. 2d 40, 43.) The record indicates that no suggestion of a conflict of interest was made prior to the rehearing of the appeal in

the appellate court, and under well-settled rules the right to raise the issue has been waived.

Recently, in *People v. Fife* (1979), 76 Ill. 2d 418, this court considered the question of the conflict which exists when a special assistant Attorney General is appointed to represent one charged with a crime. We held that unless the one charged with the crime is informed of the attorney's affiliation with the Attorney General's office and fails to effect a knowing and intelligent waiver, no prejudice need be shown by the defendant to warrant a reversal of his conviction and the granting of a new trial. In that case we also said that our holding is applicable to those cases in which a member of the same law firm has an affiliation with the Attorney General while another member represents a criminal defendant. (76 Ill. 2d 418, 424-25.) However, in *Fife,* we held that our holding would only be prospectively applied to cases involving prosecutions for offenses occurring subsequent to the filing of that opinion. (76 Ill. 2d 418, 425.) Thus not only has the defendant forfeited his right to raise the conflict issue in this court, but the prosective application of *Fife* makes the law announced therein inapplicable to this case.

The second issue raised by Lykins is his sentence of 70 to 150 years. Lykins argues that his degree of participation, his aid in the investigation, and the absence of any criminal record should have been taken into account and a lighter sentence should have been imposed. He notes that Anderson, the perpetrator, received a sentence of 75 to 100 years. In announcing the sentence, the judge explained:

> "Mr. Lykins, the court has imposed this sentence because I am of the opinion, considering the nature of this crime, considering the inhumane manner in which this young man was killed, that you, sir, are not a fit subject ever to live in society again, and I have imposed this sentence to give the Parole Board of the State of

Illinois present and future notice that this is this court's attitude concerning this matter for whatever benefit it might be to them.

With this sentence, sir, as I understand the law, you will be eligible for parole within approximately twelve years.

But as I stated, Mr. Lykins, I just don't think that you should be granted parole ever."

Though Supreme Court Rule 615(b)(4) (58 Ill. 2d R. 615(b)(4)) allows the reduction of sentences by a reviewing court, "It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we might have imposed a different sentence had that function been delegated to us." (*People v. Waud* (1977), 69 Ill. 2d 588, 596.) Absent an abuse of discretion, the sentence imposed by the trial court will not be altered. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153; *People v. Bonner* (1967), 37 Ill. 2d 553, 563.

In this case the brutality of the offense is shocking. A young, defenseless 16-year-old was robbed, beaten and brutally murdered. The trial judge is authorized to consider not only the defendant's character but also the "nature and circumstances of the offense" in imposing a sentence. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1(c)(1).) Admittedly, the sentence is severe; however, it is justified by the brutal nature of the crime. It should also be noted that under the law in effect at the time of the offense the defendant will be eligible for parole at the expiration of 20 years, less good time credit for good behavior. (Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—3(a).) The trial court was aware of this in imposing the sentence and estimated that under the provision of this statute the defendant would be eligible for parole within approximately 12 years. It was the trial judge's opinion that the defendant should not be paroled after serving only 12 years in the penitentiary. The severity

of the sentence conveys to the parole authorities the judge's opinion as to the serious nature of the offense. We do not consider the imposition of the sentence by the trial judge to have constituted a breach of discretion. Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

(No. 51454.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES EDDINGTON, Appellant.

*Opinion filed September 19, 1979.*

Richard J. Wilson, Deputy Defender, and David Bergschneider, Assistant Defender, of Springfield, for appellant.

William J. Scott, Attorney General, and C. Joseph Cavanaugh, State's Attorney, both of Springfield (Donald B. Mackay, Melbourne A. Noel, Jr., and Anita Donath, of Chicago, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Following a jury trial in Sangamon County, the defendant, James Eddington, was convicted of the crime of solicitation to commit murder. The trial court sentenced Eddington to 20 to 40 years' imprisonment. The appellate court affirmed this conviction and issued a certificate of importance. 64 Ill. App. 3d 650.

The certificate of importance related to the question of a conflict of interest of defense trial counsel who had as a partner a special assistant Attorney General. Other questions raised on this appeal are whether the trial court abused its discretion in restricting cross-examination of the State's principal witness regarding pending charges against him and whether the trial court's misstatement of the minimum sentence for the crime of solicitation to commit murder constituted harmless error under the circumstances

present in this case.

Throughout the trial proceedings Eddington was represented by a lawyer who maintained a partnership with another lawyer. This second lawyer served as a special assistant Attorney General for condemnation cases. Trial counsel informed neither Eddington nor the judge of this partnership or of the possible conflict of interest caused by it. Defendant does not contend that he was prejudiced by this conflict but contends the right to adequate representation by counsel is so fundamental that he must be granted a new trial because of the mere existence of the conflict of interest.

The holding of this court in *People v. Lykins* (1979), 77 Ill. 2d 35, is dispositive of the conflict-of-interest issue. Here, as in *Lykins,* the issue was not raised in the trial court or in the appellate court. It must be considered that the defendant has waived his right to raise the issue in this court. Also, here, as in *Lykins,* the conflict-of-interest rule adopted in *People v. Fife* (1979), 76 Ill. 2d 418, cannot be applied because in *Fife* we held that the rule announced in that case would only be prospectively applied to cases involving prosecution for offenses occurring subsequent to the filing of that opinion.

At the trial of this case, the State's principal witness, Gregory Fife, testified that Eddington offered him $1,000 if he would kill an Illinois Bureau of Investigation agent. The agent was to testify against Eddington in a separate drug case. Fife, an IBI informant, passively cooperated with Eddington in planning the murder and electrically recorded incriminating evidence against the defendant on a hidden tape recorder.

At Eddington's trial the prosecutor filed a motion *in limine* to bar cross-examination of Fife regarding unrelated drug charges pending against Fife in another county. Out of the jury's presence, the trial judge explored the issue by questioning both Fife and the prosecutor. The judge

concluded that no leniency had been offered to Fife for his testimony and that none was expected by him.

The testimony the witness, Fife, was to give at trial related to matters that had occurred in April and May of 1975. The witness had given a statement concerning these matters, which statement had been transcribed and a copy furnished to defendant's counsel. At the hearing on the motion *in limine* the defendant's counsel had been given wide latitude in examining the witness with regard to his various transgressions of the law, one of which had resulted in a sentence of probation for two years on December 7, 1976. One of the conditions of probation was that the witness refrain from using cannabis. On August 24, 1977, the witness was arrested and charged with possession and delivery of cannabis in Menard County and was incarcerated in the county jail. He was still in jail on that charge, which was undisposed of, at the time of the trial in the defendant's case in September 1977. The court, in ruling on the State's motion *in limine* not to permit the witness to be cross-examined about the 1977 drug charge, in addition to concluding that no leniency had been offered and none was expected, considered the history of the defendant's case and how this recent charge against the witness could affect his testimony. The court stated that the events about which the witness would testify occurred in 1975. Considering all the facts and circumstances, the fact that a statement of the witness had been previously taken, that the witness had previously testified at another hearing in the case, and that the cannabis charge was in a different court and had been filed only recently, the court was of the opinion that it was not reasonable to believe that the testimony of the witness would be influenced by any interest or bias in connection with the cannabis charge.

In *People v. Mason* (1963), 28 Ill. 2d 396, 400-01, this court stated:

"[S]howing interest or bias on the part of a witness is also an accepted method of impeachment, and even in jurisdictions where evidence of arrest or indictment is not ordinarily admissible to impeach credibility generally, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely."

