THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROOSEVELT WALLACE, Defendant-Appellant.

First District (5th Division)    No. 80-424

Opinion filed September 11, 1981.

Ralph Ruebner and Bradley S. Bridge, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Mark E. Thompson, and Peter J. Vilkelis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendant was found guilty of robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—1) and sentenced to a term of seven years.

On appeal, defendant contends: (1) that he was denied a fair trial in that the court prevented him from testifying as to his state of mind; (2) that it was error to refuse to instruct the jury on the defense of withdrawal; (3) that the prosecutor's improper closing arguments denied him a fair trial; and (4) that he was improperly sentenced. We affirm.

In view of the fact that defendant has not raised any question concerning the sufficiency of the evidence, only a brief recitation of the facts is necessary.

Approximately 10 p.m. on July 19, 1979, the victim, a 70-year-old woman, drove into a supermarket parking lot. She parked her car about four feet from the store's entrance and proceeded to remove some empty bottles from her trunk. As she was exiting the car, she noticed a young man and woman, who were holding hands and kissing, walking across the parking lot. They stopped about two feet from the victim.

The victim, with her purse in her left hand and the bottles in her right, then heard the sound of footsteps rushing toward her. The young man whom she identified as defendant grabbed at her purse. As she dropped the bottles and fell to her knees, defendant fled. Immediately thereafter, Wanda Cannon, who had been standing directly behind defendant, snatched the victim's purse and fled in the same direction.

The victim, still holding on to the purse strap, got up, chased after her assailants and began yelling for help. Horace Bailey, the supermarket detective, was standing at a nearby bus stop and heard the victim's call for help. He stopped and handcuffed Ms. Cannon, recovered the purse and returned to the supermarket to call the police.

Shortly after the victim gave the police a description of her assailant, defendant was brought back to the supermarket and identified by the victim. Thereafter, the victim was taken to the hospital and treated for cuts on her knees and fingers and minor injuries to her lip and nose.

Wanda Cannon, defendant's girlfriend, testified for the defense. She and defendant were walking in the supermarket parking lot and defendant had his hand around her waist. When they were within about five feet of the victim, she, without warning, pushed defendant to the side and grabbed the victim's purse. While she struggled with the victim for the purse, defendant, looking shocked, said, "I don't want anything to do with this." He then fled. Cannon further testified that she plead guilty for her participation in the robbery and was given probation.

Defendant's testimony was substantially similar to Cannon's. He also testified that he never touched nor spoke to the victim. As he fled, he heard someone yell, "halt," but did not stop. He ran across the street and down the block and sat on a bench. He watched as the police arrived at the supermarket until another squad car pulled along side the bench. He did not resist or attempt to run, and was taken back to the supermarket.

Finally, defendant admitted that he had been convicted and served time for attempted armed robbery and aggravated battery.

Thereafter, the jury found defendant guilty of armed robbery. Following a hearing on aggravation and mitigation, he was sentenced to a term of seven years. Defendant appeals.

OPINION

I

Defendant first contends that he was denied a fair trial when he was prevented from testifying as to his state of mind during and immediately after the robbery. He argues that his intent was material because it was an element of the offense. The State maintains that defendant's testimony regarding his state of mind after the incident was properly excluded because it was immaterial and that defendant was permitted to testify as to his state of mind before and during the offense.

■■ Where intention, motive or belief of an accused is material to the issues to be proved, a defendant is entitled to testify directly as to his state of mind. (*People v. Biella* (1940), 374 Ill. 87, 28 N.E.2d 111; *People v. Christen* (1980), 82 Ill. App. 3d 192, 402 N.E.2d 373.) The exclusion of such testimony has been held to constitute reversible error unless sufficient evidence of his intent is subsequently admitted. (*People v. Christen*; *People v. Lemcke* (1980), 80 Ill. App. 3d 298, 399 N.E.2d 677.) However, if the information is irrelevant to the crime charged, it may properly be excluded. *People v. Perry* (1974), 19 Ill. App. 3d 254, 311 N.E.2d 341.

Defendant objects to three specific instances in which he was precluded from testifying as to his state of mind. In order to ascertain whether the excluded evidence was material to the issue of defendant's guilt, it is necessary to consider the stricken question in the context of elements that the State must prove in order to sustain defendant's conviction for robbery. A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force. (Ill. Rev. Stat. 1979, ch. 38, par. 18—1.) In order to establish defendant's legal accountability for the conduct of another, the State must prove that the accused (1) either before or during the offense, and (2) with the intent to promote or facilitate the commission of the offense, (3) solicited, aided, abetted, agreed, or attempted to aid such other person in the planning or commission of the offense. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c); *People v. Grice* (1980), 87 Ill. App. 3d 718, 410 N.E.2d 209.) Whether an individual has the specific intent to aid or abet a crime for the purpose of imposing liability pursuant to the accountability statute is a question of fact for the jury. *People v. Kelly* (1976), 39 Ill. App. 3d 988, 351 N.E.2d 419.

■■ The first question defendant was precluded from testifying to con-

cerned his state of mind as he was sitting on the bench after he had fled from the scene of the crime. While defendant correctly argues that his thoughts or intentions at the time of the robbery were highly material, this question was attempting to establish defendant's state of mind after the robbery had been committed and, therefore, was immaterial to the issue of accountability. (See Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) Consequently, this testimony was properly excluded.

Next, defendant was precluded from testifying as to why he ran from the scene if he was not doing anything. After the court sustained the State's objection, defense counsel argued that since the State was accusing defendant on the theory of accountability, his running from the scene of the crime "seems to indicate that he might have had a guilty conscience as to the act committed." Defense counsel then made the following offer of proof:

> "Well, your Honor, as an offer of proof we would state that he ran not because he was guilty, but he ran because he was afraid he would be accused of it because of his prior conviction, and he did not go back from that park bench to the scene because he thought he was going to be accused of it."

The court stated that this was a possible inference that can be drawn from the evidence and that it could be argued, but defendant could not testify to it.

■■ Unlike defendant suggests, flight from the scene of a crime does not raise a presumption of guilt; it is a circumstance which may be considered by the jury in connection with all the other evidence as tending to prove guilt. (*People v. Perkins* (1973), 12 Ill. App. 3d 5, 297 N.E.2d 15; *People v. Brown* (1966), 69 Ill. App. 2d 212, 215 N.E.2d 812.) Likewise, defendant's mere presence at the scene of the crime would be insufficient to establish his accountability for Cannon's actions. (See *People v. Porter* (1975), 28 Ill. App. 3d 411, 328 N.E.2d 618.) In establishing accountability, the time frame for which defendant's state of mind is crucial is the period before and during the commission of the robbery. As such, defendant's "state of mind" which prompted him to flee is separate and distinct from the intent associated with assisting Cannon either before or during the commission of the instant offense. (Compare *United States v. Lampson* (7th Cir. 1980), 627 F.2d 62.) As such, defendant's testimony as to his reasons for fleeing would neither establish innocence nor his guilt.

Furthermore, contrary to defendant's contention, a review of the evidence demonstrates that he testified extensively to his state of mind before and during the commission of the robbery. He testified that prior to his being pushed by Cannon and the grabbing of the victim's purse, Cannon never indicated her plan to rob the victim. Nor did she ask for his

help. When he noticed what Cannon was doing, he stood there shocked and "asked her what the * * * was she doing." He then broke and ran. He further testified that he never grabbed, touched, spoke or demanded anything of the victim. Finally, he stated that he never aided Cannon in the commission of the offense. This testimony, if believed, would have amply established that defendant did not intend either before or during the robbery to aid Cannon in the commission of the crime and would have been sufficient to sustain an acquittal of the charges. In such a case, defendant's reasons for fleeing would have been both irrelevant and immaterial and direct testimony that he feared being accused of the present crime due to his previous conviction would have been unnecessary.

On the other hand, if the jury believed the victim's account of the incident (that defendant was the first to grab at her purse; that after she fell, defendant ran; and that Cannon, who was standing behind defendant, snatched her purse and then fled in the same direction), defendant's motivation for fleeing, while obvious, is equally immaterial to the charge of robbery since his prior actions plainly aided Cannon in the commission of the robbery. As such, the offer of proof fails to explain or undercut the gravity of defendant's initial grabbing of the victim's purse.

■■ Furthermore, during closing arguments, defense counsel fully explored and explained the intended inference. He argued that defendant was honest in that he told the jury of his previous conviction and that it was reasonable to run away in view of this background. Defense counsel continued, stating that defendant, confused and fearful, ran, and that it was common sense to sit down on the bench and figure out what to do. Had defendant been guilty, he would have hidden. Since defendant's state of mind at the time he fled was not crucial to the issue of accountability, we find no reversible error in the court's decision precluding defendant from testifying directly as to the reason for his sudden flight.

■■ The third question defendant claims he was erroneously precluded from answering concerned why he failed to grab or pull Cannon away from the victim. However, a review of defendant's entire testimony reveals that he had answered this question previously. On cross-examination, after defendant testified that he was shocked to see his fiancee attempting to snatch someone's purse, the State asked, "But you made no effort to stop her." Defendant responded, "I was in shock, too." It is well established that a court's rejection of evidence is not prejudicial where substantially the same evidence is admitted at some other stage of the trial. *People v. McMullen* (1980), 88 Ill. App. 3d 611, 410 N.E.2d 1174; *People v. Currie* (1980), 84 Ill. App. 3d 1056, 405 N.E.2d 1142.

Accordingly, we find defendant's contention that he was denied a

fair trial in that he was prevented from testifying as to his state of mind during and immediately after the robbery to be without merit.

## II

Defendant next contends that it was reversible error to refuse his requested instruction concerning withdrawal where the State was proceeding on the theory of accountability and the State's own evidence showed that defendant fled after he attempted to take the victim's purse but before the purse was actually taken. The State maintains that the instruction was properly refused in that no evidence of withdrawal was present.

The function of jury instructions is to convey to the jury the appropriate principle of law so that it may apply the correct legal principles to the facts and arrive at the proper conclusion according to the law and evidence. (*People v. Svoboda* (1979), 75 Ill. App. 3d 487, 394 N.E.2d 72.) It is well established that a defendant is entitled to the benefit of any defense shown by the entire evidence—even if the facts on which the defense is based are inconsistent with defendant's own testimony—and that very slight evidence upon a given theory of the case will justify the giving of an instruction. (*People v. Bratcher* (1976), 63 Ill. 2d 534, 349 N.E.2d 31; *People v. Rodriquez* (1981), 96 Ill. App. 3d 431, 421 N.E.2d 323.) However, where the evidence presented at trial is insufficient to meet this minimal standard, it is proper to deny a requested instruction. (*People v. Bratcher.*) Furthermore, the refusal to give an instruction as to a lesser included offense or the defense of withdrawal is not error where all the evidence adduced indicates that the jury would only be justified in returning a verdict of guilty or not guilty of the crime charged. (*People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389; *People v. Lykins* (1978), 65 Ill. App. 3d 808, 382 N.E.2d 1242, *affirmed* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182.) Thus the specific issue presented for review is whether there is any evidence in the record upon which the jury could have conceivably concluded that defendant had withdrawn from the criminal enterprise.

A person is accountable for the conduct of another when either before or during the commission of an offense, with the intent to promote or facilitate its commission, he solicits, aids or abets another in the planning or commission of that offense. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) Nevertheless, accountability can be negated and a withdrawal effected if:

> "Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforce-

ment authorities, or otherwise makes proper effort to prevent the commission of the offense." Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)(3).

Defendant argues that based upon the victim's testimony that he fled from the scene before Cannon took the purse, the jury could have found that he had withdrawn from the robbery and that therefore he was not accountable for Cannon's actions. He argues that his flight prior to Cannon's taking of the purse "deprived anything he had done earlier of any effectiveness."

■■ For a withdrawal to be effective, it must be timely so that it affords one's co-conspirators a reasonable opportunity, if they desire, to follow the example and refrain from further action before the offense is committed. Therefore, it must be possible for the trier of fact to find that the accused had wholly and effectively detached himself from the criminal enterprise before the act with which he is charged was in the process of consummation or had become so inevitable that it could not reasonably be stopped. (*People v. Brown* (1962), 26 Ill. 2d 308, 186 N.E.2d 321; *People v. Lykins* (1978), 65 Ill. App. 3d 808, 382 N.E.2d 1242, *affirmed* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182.) Accepting the victim's testimony, as defendant urges, defendant's attempt to withdraw, if at all, occurred after he grabbed at the victim's purse, causing her to fall to her knees. As such, the force which was an element of the robbery had already commenced. The robbery was already in the process of consummation. Defendant's assertion that his flight "deprived anything he had done earlier of effectiveness" is untenable. His actions forced the victim to her knees, placing her in a more vulnerable position and unquestionably facilitated Cannon's successful snatching of the purse. Furthermore, defendant does not argue nor is there any evidence to suggest that he gave timely warning to the law enforcement authorities or otherwise made a proper effort to prevent the commission of the instant robbery. (See Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c)(3).) Accordingly, the victim's testimony does not even slightly suggest that defendant effectively withdrew from the instant offense. Compare *People v. Lykins.*

On the other hand, if defendant's version of the incident, as corroborated by Cannon, is fully believed, he never touched nor spoke with the victim, he had no prior knowledge of Cannon's plan to rob the victim, he never intended to promote or facilitate the commission of the robbery, and he never aided or abetted Cannon in its commission. Under these circumstances, the withdrawal provisions of section 5—2(c)(3) would not be applicable because defendant would not have originally become accountable under section 5—2(c). (Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) Defendant would not have been part of any scheme from which he could withdraw. Had the jury believed defendant's version of the

incident, they would have found him not guilty because of never having been accountable. Compare *People v. Lykins*.

■■ Accordingly, we find that the trial court did not err in refusing the instruction on withdrawal.

### III

Defendant next contends that the prosecutor's implication during closing arguments—that if found not guilty, defendant would attack the victim—denied him a fair trial. The State maintains that defendant's interpretation of the prosecutor's remarks is unfounded and that the prosecutor's statements were based upon the evidence adduced at trial and on the reasonable inference therefrom.

While statements made during closing arguments are to be based upon the evidence adduced at trial and the inferences legitimately drawn therefrom (*People v. Boyle* (1979), 78 Ill. App. 3d 791, 396 N.E.2d 1347), a prosecutor is allowed great latitude in his argument (*People v. Tedder* (1980), 83 Ill. App. 3d 874, 404 N.E.2d 437; *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 390 N.E.2d 1339). It is well settled that the credibility of the witnesses is a proper subject of closing arguments. (*People v. Walsh* (1980), 80 Ill. App. 3d 754, 400 N.E.2d 587.) It is also proper for the prosecutor to comment unfavorably on the accused and the evils of crime and to urge the fearless administration of the law when those comments are based upon competent and pertinent evidence. (*People v. Tedder*; *People v. Boyle*.) However, it is error for a prosecutor to express a personal opinion, attempt to inflame the passion of the jury or to arouse the prejudice of the jury against defendant. (*People v. Boyle*.) In no event may a prosecutor comment on a fact not in evidence (*People v. Brown* (1972), 3 Ill. App. 3d 1022, 279 N.E.2d 765), pledge his personal reputation that a State's witness is not a false one or give his opinion as to veracity of that witness (*People v. Bitakis* (1972), 8 Ill. App. 3d 103, 289 N.E.2d 256). Nevertheless, improper remarks which are unlikely to affect the verdict do not require reversal. (*People v. Boyle*; see *People v. Miller* (1964), 30 Ill. 2d 110, 195 N.E.2d 694.) In determining whether a closing argument is so prejudicial or inflammatory that a conviction must be reversed, the reviewing court should consider the record as a whole and the arguments in their entirety. (*People v. Lawson* (1980), 86 Ill. App. 3d 376, 407 N.E.2d 899.) Finally, since the trial court is in a better position to determine the propriety of closing arguments, its determination will not be disturbed absent a clear abuse of discretion. *People v. Tedder*; *People v. Olejniczak*.

At trial, defendant's objection to the following closing remark was overruled:

"MS. LAMPKIN [prosecutor]: * * * Finally, if you find the

defendant not guilty you are rejecting the courage of Mrs. Finch and Mr. Bailey to come in here and testify against him.

MR. O'HARA [defense counsel]: Objection, your Honor. That's not proper argument.

THE COURT: I will overrule.

MS. LAMPKIN: Thank you. It takes courage to come into Court and testify against someone who you know will brutally attack someone on the street, and it takes courage when Mrs. Finch and any other witness who takes the stand knows that the two Jurors like yourselves can let that person go.

MR. O'HARA: Objection.

THE COURT: She may argue."

Defendant submits that this argument was improper because it implies he had a propensity to commit crimes and that he would harm the witnesses if acquitted. Alternatively, he argues that even if this line of argument was proper, the remark was beyond any fair inference in the record.

A review of the prosecutor's entire argument does not support defendant's interpretation of the above quoted remark. In noting the courage entailed in testifying in criminal cases, the prosecutor was merely arguing that the victim and Mr. Bailey were credible witnesses. There is simply no indication that the prosecutor was attempting to suggest that defendant would attack the victim and Mr. Bailey if found not guilty or that he had a disposition to commit violent crimes. The mere fact that an argument is unfavorable to defendant does not, in itself, establish that it is inflammatory or prejudicial. The evidence in this case showed that defendant, without warning, grabbed the victim's purse, causing her to fall and sustain injuries. A reasonable inference from these facts is that the victim and Mr. Bailey knew, first hand, that defendant would brutally attack someone on the street.

■■ At best, the prosecutor's statement was attempting to urge the effective administration of justice through vigorous law enforcement and that the victim and Mr. Bailey were doing their part. There is no question that this type of argument is proper. In fact, warnings to the jury that they should not release defendant unless they wanted an unsafe community have been held not to be inflammatory in nature. (*People v. Taylor* (1974), 18 Ill. App. 3d 367, 309 N.E.2d 642; see also *People v. Tedder* (1980), 83 Ill. App. 3d 874, 404 N.E.2d 437.) Accordingly, we find that the prosecutor's remarks were not beyond fair inference and that the comments did not deny defendant a fair trial.

## IV

Finally, defendant contends that his sentence must be reversed

because (a) the trial court did not consider probation as a possible disposition when probation could have been imposed, (b) it is excessive, and (c) it is impermissively disparative when compared to the sentence given the more culpable party. The State responds that probation was considered as a possible sentence and that the sentence was neither excessive nor impermissively disparate.

### A.

Section 5—6—1 of the Unified Code of Corrections provides in part:
"(a) Except where specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstances of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

(1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or

(2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1.)

Defendant argues that since the court did not specifically refer to the wording of the statute, it apparently concluded that probation was not possible. However, the failure to make explicit findings relative to probation does not automatically require that a sentence be vacated and remanded for redetermination. It has recently been held that the propriety of a particular sentence does not depend upon a trial court's explicit incantation of the statutory provisions relating to the granting or denial of probation. (*People v. Boyd* (1980), 81 Ill. App. 3d 259, 401 N.E.2d 304; see also *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) So long as the record demonstrates substantial compliance with section 5—6—1, then a reviewing court may alter the sentencing judge's disposition only upon a finding of an abuse of discretion. *People v. Cox.*

While we recognize that defendant's attorney during the sentencing hearing incorrectly stated, "We are not asking Mr. Wallace be sentenced to probation under the Statute it's not possible," there is no indication that the trial court considered this statement in imposing the instant sentence. To the contrary, the record clearly demonstrates that the court considered probation as a possible alternative, but concluded that it was not appropriate in the instant case. In announcing the sentence, the court stated:

"First of all, let me indicate that there was a co-defendant here who received probation. And the Court has no quarrel with that disposition. It is the judgment of the Court that from time to time. there are occasions when the interests of justice would be better

met and better served by allowing a person to rehabilitate himself or herself and grant a probated sentence rather than be incarcerated, particularly when they have had no previous history of criminality.

There is a reason, Mr. Wallace, I would indicate to you in all candor, which would call for a different disposition as far as you are concerned. * * *

There are a couple of things that are before me, and that is that violence and injury, no matter how slight, were visited upon a seventy year old woman.

And while I and the reviewing Courts are very conscious of your rights, there seems to me that there should be a corresponding right that says seventy year old women ought to be able to go to the shopping center and do their business without having their persons violated and their property taken.

The other matter is that you have had a prior incarceration, a period of two years to six years, and it is obvious to me that that did not deter you from subsequent criminality. While on parole for that offense, you did commit this crime for which you have been found guilty.

On the basis of those things, the Court will impose a sentence of seven years in the Illinois Department of Corrections, with judgment on that sentence, and mittimus to issue."

■■ It is particularly significant that the court's ruling emphasized that the instant offense entailed violence, although slight, upon a 70-year-old woman and that such individuals ought to be able to go shopping without being accosted. The court also considered very germane that defendant's prior incarceration for a similar charge did not deter him from committing the instant offense. These factors amply demonstrate that defendant's imprisonment is necessary to protect the public and that probation would deprecate the seriousness of defendant's conduct and would be inconsistent with the ends of justice.

## B.

Defendant next argues that a comparison of the aggravating and mitigating factors indicates that the statutory maximum sentence of seven years was inappropriate. Defendant concedes that his prior conviction is an aggravating factor (see *People v. Hamilton* (1980), 81 Ill. App. 3d 297, 401 N.E.2d 318), but argues that the victim's "slight" injuries are not since they did not amount to "serious harm." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1).) He also submits Cannon was a more culpable party and that this is a mitigating factor. Finally, he complains that the court never indicated why the factors in mitigation—that he was in the CETA

program, studying for his GED, had the possibility of a job with 3M, and supported his child and the child's mother from time to time—were not significant.

The trial judge is normally in a better position than a reviewing court to assess and weigh all the factors relevant to the sentence. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Day* (1979), 76 Ill. App. 3d 571, 394 N.E.2d 1378.) Therefore, absent an abuse of discretion, the sentence imposed by the trial court will not be altered. *People v. Lykins* (1979), 77 Ill. 2d 35, 394 N.E.2d 1182; *People v. Perruquet*.

■■ Unlike defendant argues, Cannon was not the more culpable party. The evidence adduced at trial established that defendant was the initial aggressor. He was first to grab the victim's purse, causing her to fall and sustain injuries. That the victim was not seriously hurt in the instant encounter does not lessen the fact that defendant preyed on a 70-year-old woman without regard for her personal safety. Additionally, the factors defendant argues in aggravation certainly did not deter him from committing the present offense. It is especially significant that defendant's prior incarceration for an attempted armed robbery and aggravated battery did not deter him from subsequent criminal activity. Finally, the court in the instant case emphasized that it had considered the evidence adduced at trial, the presentence investigation and the evidence and information offered in aggravation and mitigation. It also considered the factors in aggravation and mitigation as enumerated in the Criminal Code. (See Ill. Rev. Stat. 1979, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) Accordingly, we cannot say that the trial court abused its discretion in sentencing defendant to a term of seven years.

## C.

Finally, defendant, relying on *People v. Hall* (1973), 17 Ill. App. 3d 1, 307 N.E.2d 664, argues that a sentence of seven years is disparate when compared to the sentence of probation given Cannon.

*People v. Hall* is distinguishable. There defendant was convicted of murder and sentenced to a term of 100 to 150 years. His co-defendant, who had no prior convictions, was sentenced to a term of 20 to 50 years. Notwithstanding that defendant had pled guilty to two other violent crimes, that court noted that their participation in the instant offense was equal and concluded that defendants who are similarly situated may not receive so grossly disparate sentences. Accordingly, defendant's sentence was reduced to a term of 35 to 80 years. Initially it should be noted that here defendant's participation was not equal to that of Cannon. Defendant was the initial aggressor. He was the first to grab the victim's purse, causing her to fall and sustain injuries. Cannon merely completed the robbery after defendant weakened the victim's resistance. Additionally,

there is a marked distinction between the length of terms imposed in the *Hall* decision and defendant's sentence. Finally, we note that defendant would be eligible for early release on account of good conduct after 3½ years imprisonment as provided under section 3—6—3(a)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1003—6—3(a)(2)).

■■ The present situation is comparable to *People v. Cozzi* (1981), 93 Ill. App. 3d 94, 416 N.E.2d 1192. There defendant was convicted of murder and sentenced to a term of 20 to 30 years. On appeal, he argued that his sentence should be reduced to equal his co-defendant's sentence of 14 to 22 years. In affirming the trial court's sentence, that court stated a defendant's sentence must be based on the particular circumstances of each individual case. It noted that the trial court reached its decision only after a careful consideration of the factors pertinent to defendant. A heavier sentence was imposed because of defendant's more active participation. Similarly, the trial court in the instant case carefully reviewed defendant's individual circumstances. While recognizing that Cannon received probation for her participation, the court found that such a disposition would be inappropriate for defendant. The court further found that defendant's prior criminal history together with the nature of the present crime—an attack upon a 70-year-old woman—justified a sentence of seven years. Accordingly, we cannot say that the trial court abused its discretion in imposing this sentence.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.