THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID COOPER, Defendant-Appellant.

Fifth District    No. 80-254

Opinion filed May 18, 1981.

John H. Reid and Jean Marie Reyes, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Martin N. Ashley and Gaye A. Bergschneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The defendant, David Cooper, was convicted of burglary following a jury trial in the circuit court of Jackson County and was sentenced to three years imprisonment. He appeals this conviction and argues that he was denied due process of law because during trial the prosecution introduced testimony concerning a confession by him which had previously been suppressed as involuntary.

On the afternoon of November 13, 1979, Southern Illinois University student Greg Toelle was asleep in a Carbondale house occupied by him and three other students. He was disturbed by a noise elsewhere in the house, and went outside where he saw three black males climbing over the fence which surrounded the house. Toelle saw that one of the three was about six feet tall, had medium length hair pulled away from his face, and wore a nearly knee-length tan overcoat and dress trousers. This description matched that given by Mrs. Carmeline Kueker, a neighbor.

Toelle discovered that several rooms in the house had been ransacked. Missing from the house were a stereo, a record cleaner, some money, shotgun shells, prescription medicine, various pieces of physical education equipment, and some marijuana. The stereo was found hidden beneath some bushes inside the fence. Toelle and his roommate, Tim Londrigan, who arrived home soon after the break-in, notified the police. The sudents informed the officer that they intended to "stake out" the back yard in case the thieves returned. The officer seemed less than enthusiastic about this proposal and warned the two to be careful if they tried to catch the criminals.

Toelle and Londrigan replaced the stereo with empty beer cases, and planned a vigil to begin that night. Late that afternoon, Toelle went to the Carbondale police station to attempt to identify the man he had seen fleeing from the scene. Londrigan and another roommate, Bill Svetlik, waited in the house, armed with two shotguns and a hunting knife. At about 5 p.m., the defendant walked through the students' yard to the bushes. Londrigan and Svetlik emerged from the house, but, in the excitement, everything but one shotgun was left behind.

Londrigan cocked the shotgun and told the defendant to stand still. Svetlik took hold of the defendant by the coat, and the students directed him into the house. At first, while all were outside, the defendant claimed to be looking for marijuana plants. Later, he admitted his involvement in the burglary. He offered to return the stolen property to them if they would let him go. After they were satisfied they had enough information to locate the defendant, Londrigan and Svetlik agreed to give the defendant until midnight to recover the goods. Meanwhile, Toelle returned from the police station and identified the defendant as the man whom he had seen earlier that day.

After a 45-minute discussion, the students released Cooper. Although they did not keep a gun or knife trained on Cooper through the entire incident, Londrigan sat across the table from him with a loaded shotgun on his lap, while Svetlik and Toelle stood near the doorways.

The defendant's midnight deadline came and went; the students telephoned him, and gave him more time. When the stolen property was not returned, they notified the police. On November 15, 1979, Officers

Joseph Coughlin and Jon Kluge of the Carbondale Police Department went to the house of the defendant with a warrant for his arrest. His mother admitted the officers. Although the defendant was not at home, the officers saw a record cleaner and a bottle of pills, prescribed to Tim Londrigan, in the defendant's room. The defendant was later taken into custody.

Officer Kluge interviewed the defendant on January 22, 1980, in the Jackson County jail. Part of this interview was taped and transcribed. The defendant admitted that he had taken property from the students' house. He also described his capture by the students and his confession to them.

Before trial, defense counsel moved to suppress both confessions given by the defendant. An evidentiary hearing was held at which the circumstances surrounding these confessions were detailed. The court ordered that the statement given by the defendant to the students be suppressed as involuntary. The statement made to Officer Kluge was held admissible. No appeal was taken from the suppression order.

At trial, the People introduced the testimony of Carmeline Kueker, Greg Toelle, Tim Londrigan, Bill Svetlik, and Carbondale police officers Robert Scott and Joseph Coughlin. During the testimony of these witnesses neither the State nor the defendant made reference to the statement which the defendant had given to the students. However, during the cross-examination of Officer Kluge, defense counsel made extensive and explicit reference to the incident during which it was made.

The People rested after Officer Kluge's testimony. The defendant testified that he had heard about the burglary from an acquaintance named Kim Traylor. Traylor, who allegedly told the defendant that he and someone named Richard had broken into the house, also told him where he had hidden the stereo. According to the defendant, he went to the house to recover this property when he was apprehended by the students. The defendant was examined by his attorney on this incident.

The defendant's mother was called as a witness for the defense. She noted that Kim Traylor had indeed visited the defendant on the afternoon of the burglary. Finally, Toelle was asked to identify the record cleaner taken from defendant's house as his. The defense rested after these witnesses.

In rebuttal, the People introduced further testimony from Officer Kluge and Greg Toelle. Officer Kluge recounted the circumstances surrounding the defendant's statement to him. He stated that the defendant had admitted to the burglary, but he did not refer to the defendant's statement to the students. The People offered the transcribed statement into evidence, but it was not admitted, pursuant to the defendant's objection.

Greg Toelle's rebuttal testimony is reproduced here in its entirety:

"DIRECT EXAMINATION

By MR. STRONG [Assistant State's Attorney]

Q. State your name again for the record.

A. Greg Toelle.

Q. Mr. Toelle, I would like to refer your attention back to November 13, 1979, at approximately 5:00 in the evening, 5:00 or 6:00 in the evening at your house. At that time were you, did you have a conversation with the defendant in this case, David Cooper?

A. Yes, we did.

Q. Who else was present when that conversation took place?

A. Tim and Bill.

Q. Your roommates?

A. Right.

Q. And during the course of that conversation did Mr. Cooper deny any involvement he had had in the burglary at your house?

MR. BAIRD: Objection.

Court: Overruled.

A. No.

Q. Did he in fact sir, admit that he had indeed gone into your house?

A. Yes sir.

COURT: Mrs. Cardwell, show this as a continuing objection. (Continuing objection shown of record.)

Q. Did he in fact admit to not only going in your house but also removing property therefrom?

A. Yes.

MR. STRONG: Nothing further, Your Honor.

MR. BAIRD: No questions, Your Honor.

COURT: You are excused."

In his brief, defendant argues that the admission of Toelle's rebuttal testimony acted to deny him due process. He relies upon *Mincey v. Arizona* (1978), 437 U.S. 385, 57 L. Ed. 2d 290, 98 S. Ct. 2408, in which the court held that an involuntary confession may not be used for impeachment. Our attention is directed to the statement in Justice Stewart's majority opinion that "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law 'even though there is ample evidence aside from the confession to support the conviction.'" (Emphasis in original.) 437 U.S. 385, 398, 57 L. Ed. 2d 290, 303, 98 S. Ct. 2408, 2416.

■■ The People reply that (1) the court erred in suppressing defendant's

statement to the students and (2) even if the statement was involuntary, its mention in rebuttal was only harmless error. As the People failed to appeal from the trial court's order of suppression, they are barred from relitigating the issues decided by that order. (*People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878.) Consequently, we must treat defendant's confessions as involuntary, as did the trial court.

■■ A criminal defendant is denied due process of law if his conviction is based, wholly or partially, on the admission of testimony concerning that defendant's involuntary confession. *Mincey v. Arizona; Jackson v. Denno* (1964), 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774; *People v. Strader* (1967), 38 Ill. 2d 93, 230 N.E.2d 569; *People v. Stone* (1978), 61 Ill. App. 3d 654, 378 N.E.2d 263.

■■ The facts presented here furnish compelling reason to exclude defendant's statement. With or without approval from the police, the students armed themselves with guns and knives and waited for someone to come for the stereo. When the defendant arrived, it can hardly be argued that he was not coerced into accompanying them to the kitchen where they discussed the burglary with the weapons close by. It is difficult to tell whether the students were polite, frightened, angry, excited, or threatening. But, given the setting of this discussion, we cannot see how the defendant's statement can be considered anything but the product of his instinct for survival. Therefore, we must reverse defendant's conviction and remand this cause for a new trial.

Reversed and remanded.

KARNS, J., concurs.

Mr. JUSTICE JONES, dissenting:
I respectfully dissent.

Even though I disagree with the majority's assessment concerning the voluntary character of defendant's admissions, I must agree that since the People failed to appeal from the trial court's order of suppression, they are barred from relitigating the issues decided by that order. (*People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878.) Therefore, we must treat defendant's confessions as involuntary, and consequently my emphasis is also on Mr. Justice Stewart's statement that:

> "*any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law 'even though there is ample evidence aside from the confession to support the conviction.' " (Emphasis in original.) (*Mincey v. Arizona* (1978), 437 U.S. 385, 398, 57 L. Ed. 2d 290, 303, 98 S. Ct. 2408, 2416.)

My objection to the majority's reasoning is that they have attempted to

apply this language in a vacuum without addressing the fact that defense counsel's trial tactics invited the complained-of testimony.

Although the majority opinion reproduces Greg Toelle's rebuttal testimony in its entirety, the majority has failed to detail the testimony, procured by defendant, which made the rebuttal testimony necessary. During its examination of witnesses the State made *no reference* to the admission which defendant had made to the students. However, during cross-examination of Officer Kluge, *defense counsel* made explicit reference to this incident. The following excerpts reproduce that cross-examination in pertinent part:

"Q. [DEFENSE COUNSEL] Now in the course of that statement, Detective Kluge, isn't it true that David Cooper told you that he was taken at gunpoint and at knifepoint in the back yard of 316 Linda Drive later that afternoon?

\* \* \*

A. [OFFICER KLUGE] He said that there were three men that did approach him with those weapons.

Q. Did he also tell you that they took him into the house at 316 Linda Drive later on that day?

A. Pardon?

Q. Did he also tell you that they took him into the house at 316 Linda Drive on that day?

A. Yes sir.

Q. And isn't it true, Detective, that during that conversation Mr. Cooper told you that there was an agreement reached between the people at 316 Linda Drive and David Cooper as to the return of certain property that was taken?

A. I don't think it was specifically mentioned during the tape recorded interview. It may have been discussed prior to that.

Q. Is there something that might refresh your memory on that?

A. The transcript undoubtedly would.

Q. Detective Kluge, I am going to hand you what I have had marked as Defendant's Exhibit No. 1 for identification and ask you to look at that. Can you tell me what that is, sir?

A. This is a copy of the transcript of the tape recorded statement made by David Cooper on January 22nd, 1980.

\* \* \*

Q. And isn't it true, sir, that Mr. Cooper told you that he was to return the property that had been taken and the police would not be called or contacted as to him being apprehended there, correct?

A. Yes.

Q. And isn't it true, Detective Kluge, that David Cooper told you

that there was a lot of dope taken from the house and that he was supposed to get the dope back?

A. He said something like that, yes sir.

\* \* \*

Q. Isn't it also true, Detective Kluge, that David told you that when he was apprehended in the back yard at 316 Linda Drive that he was taken into the house by the side door by the garage?

COURT: Let the record show that witness again referring to the transcript, if that is necessary to refresh his memory.

A. I remember that they did take him inside, I don't remember specifically what door.

Q. And do you recall when you talked to David, did David tell you that when he was taken into the house at 316 Linda Drive that he was there for sometime?

A. Yes."

The People rested after Officer Kluge's testimony. Defendant then testified that he had not participated in the burglary but that he had heard about it from an acquaintance named Kim Traylor. Traylor allegedly told defendant that he and someone named Richard had broken into the house and had hidden the stereo in the bushes. According to defendant, he went to the house to recover this property when he was apprehended by the students. Defendant continued his testimony by making extensive reference to what occurred after he was apprehended. As outlined below, defendant testified that he had told the students he had heard about the burglary but had not participated in it. Defendant was examined by his attorney on this incident, as follows:

"Q. [DEFENSE COUNSEL] Did you in fact go to this place on Linda Drive?

A. [DEFENDANT] Yes, I did.

Q. What happened when you got there?

A. Well, as I was going out toward the direction I made up well if the guy sees me in his yard or something I will just tell them I was cutting through over to my guy's house next door.

Q. What happened when you got to that yard?

A. I never did make it to the back of the yard. I was right about somewhere in the middle of the yard and two guys came toward me with a gun and one of them had a knife.

Q. Are those the two guys that testified here earlier today?

A. Yes.

Q. After those guys came to you with the guns what happened then?

A. I made up, I was just telling them, you know, I came back

here, you know. They was telling me that the house had been broken in and then they looked at me and they said, yeah, you look like the one that done it. I told them, I said, well, I came back you know to get the stuff but I didn't have nothing to do with the burglary. I also told them you know, before this happened, you know, I was trying to make up a bunch of excuses but he wouldn't go for it you know, because he had a gun on me so I just told him, you know, the very reason I was really came [sic] there for.

Q. After you told him that, Mr. Cooper, what happened then?

A. Well, that is when they led me into the house.

Q. And did you have a conversation with them in the house?

A. Yes, I did.

Q. And what was that conversation about?

A. It was about the stuff that came up missing, about some dope that also came up missing.

Q. And did you have some sort of an agreement with those people?

A. Yes, I did.

Q. What was the agreement?

A. I told them that I would go to the two guys I had talked to earlier in the day and make an agreement with them that if I got the stuff back and some money, you know, that you won't call the police in on me.

Q. Did they agree to that?

A. Yes, they did.

Q. And did they let you go?

A. Yes, they did."

It was only after defendant had elicited testimony, indicating that he had denied direct involvement to the students, that the State offered the rebuttal testimony reproduced in the majority opinion. Therefore, defense counsel invited the rebuttal testimony, and it is well established that a defendant can not complain of testimony invited by defense counsel. (*People v. Burage* (1961), 23 Ill. 2d 280, 178 N.E.2d 389, *cert. denied* (1962), 369 U.S. 808, 7 L. Ed. 2d 555, 82 S. Ct. 651; *People v. Baker* (1980), 82 Ill. App. 3d 240, 402 N.E.2d 662.) Accordingly, it has been authoritatively recognized that constitutionally inadmissible evidence may be allowed in rebuttal under circumstances such as occurred here. This is because "defense tactics which likewise seek to gain extraordinary advantage from the fact of suppression of certain evidence may also be deemed to have 'opened the door' * * * [because there was] a calculated effort to create a high degree of confusion based upon knowledge that any adequate explanation would require some reference to evidence previously suppressed." (3 LaFave, Search and Seizure §11.6(b), at 711-12

(1978).) Any other rule of law would be ill-founded, because without such a rule the prosecution would be powerless to correct the misrepresentations which a criminal defendant could otherwise make with impunity.

In Illinois this principle has been held to apply to the introduction of a statement (*People v. Green* (1972), 9 Ill. App. 3d 280, 292 N.E.2d 65), and the failure to make a statement (*People v. Lykins* (1978), 65 Ill. App. 3d 808, 382 N.E.2d 1242, *affirmed* (1977), 77 Ill. 2d 35, 394 N.E.2d 1182, *cert. denied* (1980), 445 U.S. 952, 63 L. Ed. 2d 787, 100 S. Ct. 1602), even though that evidence would otherwise be constitutionally inadmissible. It has also been used to bar objection on appeal to an allegedly involuntary statement used at trial. (*People v. Franklin* (1966), 74 Ill. App. 2d 392, 220 N.E.2d 872.) In fact, the rule that defendant may not urge reversal on the basis of error which he invited at trial is such a basic tenet of American criminal procedure that Justice Stewart's statement in *Mincey* is, beyond doubt, qualified by that rule. (*Lawn v. United States* (1958), 355 U.S. 339, 2 L. Ed. 2d 321, 78 S. Ct. 311; *Dennis v. United States* (1951), 341 U.S. 494, 95 L. Ed. 1137, 71 S. Ct. 857; *United States v. Steele* (8th Cir. 1979), 610 F.2d 504.) Consequently, if defendant invited the use of Toelle's rebuttal testimony, he cannot claim error from that use.

An examination of the record, especially those portions reproduced here, persuades me that defendant did elicit the evidence of which he now complains. Defense counsel attempted to discredit defendant's later confession to police by showing that defendant gave it only after: (1) being told by police that he would be better off if he cooperated; and (2) having originally denied direct involvement in the burglary to the students. In procuring this testimony defense counsel not only laid bare the facts and circumstances surrounding the admissions to the students but also introduced defendant's version of what was said while attempting to keep the prosecution mute. I will not pass judgment on this trial tactic. However, I do not think that the defendant is entitled to a new trial because of the State's use of rebuttal testimony concerning the same events.

The majority opinion has the effect of turning the trial court's order of suppression into a one-sided prohibition. Under the majority's rationale defendants will be free to make virtually any representation concerning a suppressed event, and the State cannot attempt to impeach that statement without risking reversal. For these reasons I would affirm.