Samuel Houston COLEMAN,
Petitioner–Appellant,

v.

Michael O'LEARY, Warden, Stateville Correctional Center, and Attorney General of Illinois, Respondents–Appellees.

No. 86–1433.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1987.

Decided April 25, 1988.

As Amended April 27, 1988.

Rehearing Denied July 8, 1988.

Frank P. Tighe, III, Arvey, Hodes, Costello & Burman, Chicago, Ill., for petitioner-appellant.

Scott Graham, Ill. Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before WOOD, Jr., COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

Petitioner-appellant Samuel Houston Coleman appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254 on the ground that he failed to preserve a substantive claim of error in state court. We affirm.

## I.

After a jury trial in the Circuit Court of Lake County, Illinois, Coleman was convicted of rape and unlawful restraint, and sentenced to concurrent terms of twenty-five years imprisonment for rape and three years imprisonment for the unlawful restraint. The Illinois Appellate Court affirmed his rape conviction but vacated his conviction for unlawful restraint. The Illinois Supreme Court denied his petition for leave to appeal the rape conviction, and Coleman filed a writ of habeas corpus in the federal court.

On December 20, 1982, prior to his trial date in the Illinois state court system (February 7, 1983), the trial judge granted Coleman's motion for an order requiring that the state preserve any evidence of blood or sperm in its possession, for examination by defense experts. At a hearing on January 17, 1983, the trial court, again at Coleman's request, entered another order directing the Illinois Department of Law Enforcement's Crime Lab to perform a "secretor test"[1] of that evidence for the purpose of comparing the results of the test to blood and saliva samples from Coleman and the victim.

Notwithstanding the court's orders, on January 21, 1983, Coleman's attorney (on Coleman's behalf) met privately with the state prosecutor handling the case, Michael Fusz, and asked him to agree to postpone the secretor test. Fusz responded that the

state intended to comply with the court's order directing the Illinois Crime Lab to proceed with the secretor test. Defense counsel emphatically replied that she did not intend to "pursu[e] that avenue of defense" and, if the state insisted on testing her client, she would seek an order to prevent the test. The state's attorney replied that the State intended to perform the test despite defense counsel's objections.[2] Coleman's attorney failed to carry through with her threat to seek a court order barring the administration of the secretor test and never filed the threatened motion to bar the test. Sometime after a private meeting between respective counsel on January 21 (before the January 31 pre-trial conference) the State's Attorney's Office determined that the results of a secretor test were unnecessary for its case, and advised defense counsel that the prosecution did not intend to perform the test. Neither the State nor defense counsel made known to the trial court prior to the pre-trial conference that they had decided not to comply with the court order and have the defendant tested.

Sometime prior to the January 31, 1983, pre-trial conference, after she had been advised of the prosecution's agreement with her test decision, Coleman's attorney consulted with her client and changed her mind, and decided that the test should be performed. Thereafter, at the pre-trial

---

1. A "secretor" is an individual whose saliva and other body fluids contain a water-soluable form of the antigens (called ABH antigens) of the ABO blood group. Stedman's Medical Dictionary 1269 (5th ed. 1982). The ABH antigens of the ABO blood group system are present in the secretions of most people. Thompson and Thompson, Genetics in Medicine 170–71 (4th ed. 1986) (About 22% of Caucasians are "nonsecretors"). *See also Johnston v. Pittman,* 731 F.2d 1231, 1233 n. 1 (5th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985) (More than 80% of all humans secrete blood group substances in all their secretions). In a rape case, the presence of these antigens in body fluids makes it possible to test a sample of seminal fluid taken from the victim and compare it with samples of a defendant's saliva and/or blood. While we express no opinion as to the reliability of secretor testing in general, the Ninth Circuit has noted that "[t]he results of

such a test cannot positively identify a defendant as the perpetrator, but the test *can* conclusively exculpate an individual if the blood types do not match. This procedure is widely employed by law enforcement authorities, and has been accepted by a number of the courts." *Hilliard v. Spaulding,* 719 F.2d 1443, 1445 (9th Cir.1983) (emphasis in original) (collecting cases). *See also* Baechtel, *Secreted Blood Group Substances: Distributions in Semen and Stabilities in Dried Semen Stains,* 30 Journal of Forensic Sciences 1119–29 (Oct. 1985). This Circuit has not yet had occasion to express its views on this subject.

2. Both the prosecuting attorney and counsel for the defendant recited to the trial judge their versions of their out-of-court conversation. The district court found that "their versions were materially the same."

conference on January 31, 1983, (one week prior to trial), the defense attorney reversed her position concerning whether Coleman should be tested, and advised the court for the first time that its order requiring the secretor testing had not been carried out. Although the trial court had never withdrawn its order, Coleman's attorney requested an immediate order "reinstating" the court's order of January 17 requiring the tests. The trial judge denied Coleman's motion to continue the testing order, stating:

> "Well, you are both as officers of the court have represented I think generally speaking the same conversation between you and that is that you no longer wanted that order enforced.... And so I deny your motion for any—to reinstate the order and you ought to know that *if you are dealing with a court order, it ought to be done here in court and not in the State's Attorney's Office or in your office.*"

(Emphasis added).

The parties did not raise the question of testing again until after trial (with the defendant's filing of post-trial motions), and as a result of defense counsel's conduct and the court's refusal to continue the testing order, the secretor test was never performed. Coleman proceeded to trial and a jury convicted Coleman of rape and unlawful restraint.[3]

Subsequently, Coleman appealed his convictions to the Illinois Appellate Court, arguing in part: (1) that the trial court's order refusing to "reinstate" or continue the testing order should be construed as a trial court finding that Coleman had "waived his right to the state-paid services of an expert witness [to perform the secretor test]," and (2) that the court erred in so ruling. Affirming the trial court's denial of Coleman's motion to continue the January 17 order requiring the secretor test, the state appeals court initially recognized "that circumstances may exist wherein an indigent defendant would be entitled to the state-paid services of an expert witness deemed necessary to his defense." Nevertheless, the court held that:

> "We do not consider in these circumstances that the trial court erred in refusing to again order the tests. A defendant must take affirmative action to protect his own rights when faced with a possible denial of due process (*see People v. Smith* (1982), 111 Ill.App.3d 895 [67 Ill.Dec. 565, 444 N.E.2d 801]), and failure to do so or taking action inconsistent with his asserted due process right *may result in its waiver*. (*People v. Scott* (1979), 77 Ill.App.3d 1003 [33 Ill.Dec. 563, 396 N.E.2d 1287]). The trial court, reasonably enough, concluded defendant no longer wished the test[ ] to be performed and had waived his right to it. Even were we to consider the denial of defendant's second request for testing to be error, which we do not, *it was clearly invited by the conduct of defendant and his counsel* and may not be relied upon by him on review. *See People v. Spates* (1970), 77 Ill.2d 193 [32 Ill.Dec. 333, 395 N.E.2d 563]; *People v. Robertson* (1975), 34 Ill.App.3d 762 [340 N.E.2d 213]."

*State v. Coleman,* No. 83–267 unpublished order at 2 (March 28, 1984) [122 Ill.App.3d 1162, 86 Ill.Dec. 304, 475 N.E.2d 301 (table) ] (emphasis added). Hence, the Illinois Appellate Court construed the trial court's decision as ruling that Coleman had either waived and/or invited the trial court's alleged error in refusing to continue its prior testing order, and affirmed the court's decision on both grounds.

Following the Illinois Supreme Court's denial of Coleman's leave to appeal to that court, Coleman filed a petition for a writ of habeas corpus in federal court. Denying the writ, the district court expressly assumed for the purposes of analysis "that a federal constitutional right exists to have a secretor test performed at state expense in certain circumstances." (Order of district

---

**3.** The evidence against Coleman consisted almost exclusively of the victim's testimony identifying Coleman as the perpetrator. Because the attack occurred at night, Coleman's primary defense strategy was to challenge the degree of visibility during the attack and to question the victim's ability to provide a reliable identification of the attacker.

court at 4 n. 1).[4]  Accepting the Illinois Appellate Court's subsidiary holding that under Illinois law the conduct of Coleman and his attorney leading to the trial judge's refusal to continue his initial testing order "invited the error," the district court found that defense counsel's conduct in affirmatively demanding that the test not be performed, and threatening to file a motion to bar the same amounted to a "procedural default" that should be accorded deference under federal law, thereby barring habeas relief absent the defendant's ability to establish "cause *and* prejudice" for the default under *Wainwright v. Sykes,* 433 U.S. 72 (1977).  Because Coleman's attorney failed to provide any reason for her request on his behalf to bar the test and for her later change of position, the court held that Coleman had not demonstrated "cause" for the procedural default, and denied Coleman's petition for issuance of the writ.

Coleman raises two issues on appeal: (1) whether the state court's twin rulings that the conduct of Coleman and his attorney either waived and/or invited the alleged error is supported by Illinois law; and (2) whether the "actual innocence" exception to the "cause and prejudice" rule requires that a secretor test be performed notwithstanding any procedural default in state court.

## II.

A state prisoner is entitled to relief under 28 U.S.C. § 2254 if he or she is held "in custody in violation of the Constitution or laws or treaties of the United States." Notwithstanding this statutory guarantee, firmly embedded in Supreme Court precedent is the doctrine that a federal habeas petitioner who fails to comply with a state procedural rule, such as waiver or invited error, at trial, thus barring state appellate

court consideration of the merits of a criminal defendant's challenge to a state court conviction, precludes federal habeas review of that claim absent a showing of cause for, and prejudice resulting from, the procedural default.  *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *Reed v. Ross,* 468 U.S. 1, 11, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). *See also United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed. 2d 816 (1982) ("cause and prejudice" standard in § 2255 actions).  The Supreme Court has further held that the question whether the state court properly applied its state procedural rule (in this case waiver and invited error) is not, with some narrow exceptions, reviewable by a federal court:

"A judgment of a state court on a question of state law 'conclusively establishe[s]' the meaning of that law.  *Bute v. Illinois,* 333 U.S. 640, 668, 68 S.Ct. 763, 778, 92 L.Ed. 986 (1948).  '[I]t is for the [state] courts to say under its law what duty or discretion the court may have had.... We are not at liberty to conjecture that the trial court acted under an interpretation of the state law different from that which we might adopt and then set up our own interpretation as a basis for declaring that due process has been denied.  We cannot treat a mere error of state law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a state court on state law would come here as a federal constitutional question.' *Gryger v. Burke,* 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948).  'Whether state statutes shall be construed one way or another is a state question, the final decision of which rests

---

4. The district court noted that "some federal courts have recognized that a defendant accused of rape may have a constitutional right to have secretor tests performed when the defendant makes a request for the test." *See Johnston v. Pittman,* 731 F.2d at 1234; *Davis v. Pitchess,* 388 F.Supp. 105 (C.D.Cal.1974), *aff'd,* 518 F.2d 141 (9th Cir.1974), *rev'd on other grounds,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Bowen v. Eyman,* 324 F.Supp. 339 (D.Ariz.1970).

*And see Hilliard v. Spalding,* 719 F.2d 1443, 1445 (9th Cir.1983) (Suppression of sperm sample by the government constitutes a violation of *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). *Cf. Little v. Streater,* 452 U.S. 1, 101 S.Ct. 2202, 68 L.Ed.2d 627 (1981) (Due process requires a state to pay for blood grouping tests on behalf of an indigent defendant in a paternity suit).

with the courts of the State. The due process clause in the Fourteenth Amendment does not take up the statutes of the several States and make them the test of what it requires; nor does it enable this Court to revise the decisions of the state courts on questions of state law.' *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926). 'We are of course bound by a State's interpretation of its own statute and will not substitute our judgment for that of the State's when it becomes necessary to analyze the evidence for the purpose of determining whether that evidence supports the findings of a state court.' *Garner v. Louisiana,* 368 U.S. 157, 166, 82 S.Ct. 248, 253, 7 L.Ed.2d 207 (1961). '[W]e have no power to revise judgments on questions of state law.' *Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965)."

*Cole v. Young,* 817 F.2d 412, 429–30 (7th Cir.1987) (dissenting opinion). Not surprisingly, case law within this circuit holds that the question of whether the state court properly applied its state procedural rules is a matter of state law, and may not, as a matter of comity and federalism, be reviewed by a federal court in a habeas case. *See United States ex rel. Tonaldi v. Elrod,* 782 F.2d 665, 668 (7th Cir.1986). "A federal court sitting in habeas corpus is required to respect *a state court's finding of waiver* or procedural default under state law. Federal courts do not sit to correct error made by state courts in the interpretation and application of state law." *Williams v. Lane,* 826 F.2d 654, 659 (7th Cir.), *cert. denied sub nom. Ward v. Thieret,* — U.S. ——, 108 S.Ct. 353, 98 L.Ed.2d 378 (1987) (emphasis added). Although the *Williams* case dealt with the Illinois waiver rule, we discern no reason to depart from the principle requiring that we accord deference to a state's application of its procedural rules with respect to Illinois' "invited error" doctrine; hence, to the extent that the holding of the Illinois court is premised upon either the doctrines of "waiver" and/or "invited error" under Illinois law, this court is without the "power to revise judgments on questions of state law," and thus we must defer to the state court's ruling that the doctrines were properly applied to the facts of this case. *Henry v. Mississippi,* 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965); *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926).

Despite the requirement that we defer to a state's application of its procedural rules, "there are federal limits on a state's ability to construct procedural rules, the failure to comply with which precludes consideration of the merits of a claim in a federal habeas corpus proceeding." *Williams,* 826 F.2d at 659. There we articulated these limits as follows:

"A state court's rejection of a federal constitutional claim because of a procedural default bars federal habeas review of that claim *only if state law furnishes an independent and adequate procedural ground for the court's ruling....* The Supreme Court has on several occasions found state procedural rules to be inadequate to preclude federal review of constitutional claims where the procedural requirement was novel or sporadically applied.... The Supreme Court has stated with some frequency that to insist on compliance with novel or unevenly applied state procedural rules would 'force resort to an arid ritual of meaningless form.'"

*Id.* (citations omitted) (emphasis added). *See also United States ex rel. Burnett v. Illinois,* 619 F.2d 668, 670–73 (7th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980) (Arbitrary application of Illinois waiver rule would justify federal habeas relief). While "state law must furnish an independent and adequate ground for the [state] court's ruling," *Williams,* 826 F.2d at 659, the Supreme Court has "long recognized that a 'mere error of state law' is not a denial of due process.... If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this court] as a federal constitutional question.'" *Engle v. Isaac,* 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982) (quoting *Gryg-*

er v. Burke, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948)).

In reaching its conclusion that the trial court did not err in denying Coleman's second request for secretor testing, the Illinois Appellate Court made two separate subsidiary rulings. Initially, the court implicitly held that the defendant's failure to "take affirmative action to protect his own rights" resulted in a waiver of those rights. Second, and more explicitly, the court ruled that any perceived error was clearly invited by defense counsel's affirmative demand and threat to bar the test. Thus, the court's holding appears to be based not only on Illinois' "waiver" doctrine, but also on the Illinois "invited error" doctrine. As such, we proceed to analyze whether an independent and adequate state procedural ground supports each ruling.

■ The parties do not dispute, and our research establishes, that the doctrines of waiver and invited error are firmly embedded in Illinois law. With respect to invited error, the Illinois Supreme Court has stated that "[i]t is a well-settled principle of law that a party will not be allowed to take advantage of his own wrong or of an error of the court induced by his motion." *People v. Clements*, 316 Ill. 282, 284, 147 N.E. 99, 100 (1925). *See also People v. Cooper*, 96 Ill.App.3d 607, 52 Ill.Dec. 71, 421 N.E.2d 934 (1981) (Karns, J. dissenting) ("Basic tenet of American criminal procedure"). While the majority of cases applying the invited error doctrine are premised upon counsel's *in-court* conduct, *see e.g., People v. Schuning*, 106 Ill.2d 41, 86 Ill.Dec. 922, 476 N.E.2d 423 (1985) (opening statement); *People v. Dixon*, 91 Ill.2d 346, 63 Ill.Dec. 442, 438 N.E.2d 180 (1982) (closing argument); *People v. Benka*, 117 Ill.App.3d 221, 72 Ill.Dec. 766, 453 N.E.2d 71 (1983) (pre-trial motion to consolidate cases); *People v. Stout*, 110 Ill.App.3d 830, 66 Ill.Dec. 496, 443 N.E.2d 19 (1982) (admission of evidence at trial), nothing in Illinois case law expressly purports to so limit the doctrine. In fact, the doctrine has been held to apply whenever "[a] defendant ... acquiesce[s] or participate[s] in the introduction of error in the record." *People v. Patterson*, 90 Ill.App.3d 775, 46 Ill.Dec. 258, 413 N.E.2d 1371, 1377 (1980). *See*

also *People v. Spates*, 77 Ill.2d 193, 32 Ill.Dec. 333, 336, 395 N.E.2d 563, 566 (1979). Manifestly, defense counsel "invited" the error in that the secretor test would have been performed were it not for her direct and unequivocal affirmative demand that the test not be performed notwithstanding the court's order to the contrary, and further her threat to file a motion to bar performance of the test. Under these circumstances, we agree with the district court that defense counsel is not "allowed to take advantage of ... [an alleged] error of the court induced by [her conduct]." *Clements*, 316 Ill. at 284, 147 N.E. 99. Thus, the trial judge's waiver ruling did not constitute the application of a "novel or unevenly applied state procedural rule[ ]." *Williams*, 826 F.2d at 659. We hold that the Illinois Appellate Court's ruling with respect to invited error rests on an independent and adequate state procedural ground.

■ We next consider whether or not the Illinois Appellate Court's implicit waiver ruling rests on an independent and adequate state procedural ground. It is well-settled in Illinois law that a party who intends to object to and/or not comply with a court order bears the burden of objecting to and requesting a court ruling, thus making a record of the objection. *See e.g., People v. Hall*, 114 Ill.2d 376, 413–14, 102 Ill.Dec. 322, 337–38, 499 N.E.2d 1335, 1350–51 (1986) (Error waived where the judge did not rule on defendant's objection and instead ordered a recess and the defendant failed to pursue the objection when court reconvened); *People v. Caballero*, 102 Ill.2d 23, 38, 79 Ill.Dec. 625, 632, 464 N.E.2d 223, 230 (1984), *cert. denied*, 469 U.S. 963, 105 S.Ct. 362, 83 L.Ed.2d 298 (1984) (Error waived when judge did not rule on objection and defense counsel did not request a ruling or call the judge's attention to the fact that no ruling had been requested); *People v. Scott*, 77 Ill. App.3d 1003, 1004, 33 Ill.Dec. 563, 565, 396 N.E.2d 1287, 1289 (1979) (Error waived when the defendant withdrew the section of her motion requesting the services of a state-paid expert witness). In the case at hand, we perceive no error in the Illinois Appellate Court's conclusion that defense

counsel's direct and unequivocal objection to the test and her threat to file a motion to bar the court's order requiring the secretor test amounted to waiver under the Illinois case law cited above. Not only did counsel for the defendant fail to act on the court's order, but counsel also expressed her intent to the prosecution to seek a court order to bar the testing. This in turn caused the prosecution to reevaluate and change its position with respect to the court's testing order, leading to the parties' failure to comply with the court's order. In this regard, we note that both defense counsel and the prosecution were remiss in their obligation to inform the trial court of their private discussions and the reason behind their failure to carry out the court's testing order.[5] Although counsel on the eve of trial reversed her position and sought to have the test performed, the court ruled:

"Well, you are both as officers of the court have represented I think generally speaking the same conversation between you and that is that you no longer wanted that order enforced.... And so I deny your motion for any—to reinstate the order and you ought to know that *if you are dealing with a court order, it ought to be done here in court and not in the State's Attorney's Office or in your office.*"

(Emphasis added).

At the pre-trial conference, the trial court had every reason to assume that the attorneys had complied with its order; the judge could very well have interpreted defense counsel's late change in position as a delaying tactic. This court has repeatedly emphasized that " '[i]t is critically important that a trial court be able to maintain control over its calendars and that a trial date once set must be adhered to unless there are compelling reasons for granting a continuance.' " *United States v. Zambrana*, 841 F.2d 1320, 1328 (7th Cir.1988) (quoting *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1230 (7th Cir.1983)). In *Kagan v. Caterpillar Tractor Company*, 795 F.2d 601, 608 (7th Cir.1986), we stated that:

"Trial judges have a responsibility to litigants to keep their court calendars as current as humanly possible. This is not an easy task in view of the nearly impossible demands placed on trial judges in the overburdened [ ] court system.... [I]f a trial judge does not closely monitor his calendar and prevent needless delay, he would soon be buried beneath the pending case load."

Under the circumstances set forth above, we agree with the Illinois Court that the trial judge's refusal to order tests at that late date (one week prior to trial) was appropriate under Illinois law. Thus, the court's waiver ruling is supported by an independent and adequate state procedural

---

**5.** In her motion for a new trial, Coleman's attorney was also less that forthright in recounting the details of her private conversation with the State's Attorney on January 21, 1983. Coleman's "Motion for a New Trial or for Judgment Notwithstanding the Verdict" filed March 25, 1983, reports the sequence of events leading to the trial court's order of January 31, 1983, as follows:

"2. The trial court erred in vacating its' [sic] order of January 17, 1983 on January 31, 1983. Said order was for a secreter's [sic] test and the court, in vacating said order, denied the defendant an opportunity to present a defense.

(a) The Court vacated its previous order because defense counsel indicated to the State's Attorney that she wanted the order stayed briefly. The State's Attorney then informed defense counsel that he was proceeding with the enforcement of the order.

(b) On January 31, 1983, defense counsel indicated to the court that she wanted the order enforced.

(c) The defendant, Samuel Coleman, wanted the order enforced, and defense counsel did not consult him about having the order vacated."

(R. Vol. I 95–96).

Notably missing from this recitation is the crucial fact that it was *defense counsel's* direct and unequivocal affirmative demand that the secretor test not be performed and her threat to seek an order to that effect that resulted in the lack of testing on Coleman. The motion also fails to mention that defense counsel did not disclose the parties' private conversation to the trial court prior to the January 31, 1983, pre-trial conference. Counsel's continued lack of candor to the trial judge confirms our conclusion that the conduct of Coleman's attorney before the trial court amounted to waiver and/or invited error under Illinois law.

rule. As such, we as a federal habeas court must defer to the state's legal ruling regardless of whether we find the rule to be wise or well-reasoned. *See United States ex rel. Crist v. Lane,* 745 F.2d 476, 482–83 (7th Cir.1984), *cert. denied,* 471 U.S. 1068, 105 S.Ct. 2146, 85 L.Ed.2d 503 (1985); *Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 272 (7th Cir.1983).

## III.

■ Since as a matter of state law Coleman invited and/or waived any alleged error in the trial court's refusal to issue a second order mandating secretor testing, this state procedural default bars federal habeas review unless Coleman demonstrates cause for, and prejudice resulting from, the default under *Wainwright v. Sykes. See Cartee v. Nix,* 803 F.2d 296, 300 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987). In *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986), the Supreme Court held that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." As an example of what would constitute "cause" under this standard, the court noted that unconstitutionally ineffective assistance of counsel would establish cause for a procedural default. *Id.* But despite the court's statement that cause may be so established, the court continued:

> "... we think that the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."

*Id.* In this case, Coleman did not attempt to establish cause through the presentation of an ineffective assistance of counsel argument to the state court as an independent claim; hence, he may not, and does not attempt to, raise the claim for the first time on habeas review. *See Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 2665–66, 91 L.Ed.2d 434 (1986); *United States ex rel. Villa v. Fairman,* 810 F.2d 715, 717 (7th Cir.1987).

Implicitly conceding his inability to establish cause for the procedural default in state court, Coleman's primary argument is that *Murray v. Carrier* provides an "actual innocence" exception to the cause and prejudice standard that should be applied here. Although the court in *Murray* expressed confidence that most " 'victims of a fundamental miscarriage of justice will' meet the cause-and-prejudice standard,' " 106 S.Ct. at 2650 (quoting *Engle,* 456 U.S. at 135, 102 S.Ct. at 1576), it recognized that " '[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Id.*

We hold that the evidence against Coleman at trial overwhelmingly supported his conviction. The record is void of any showing either by affidavit, much less testimony, that the state trial court's alleged improper denial of Coleman's untimely motion to continue the secretor testing order "precluded the development of true facts [or] resulted in the admission of false ones," *Smith v. Murray,* 106 S.Ct. at 2668, and the *Murray* exception is inapplicable. Given the overwhelming evidence of guilt, a review of the record discloses that the omission of the results of a secretor test in this case was not so crucial to the ultimate question of guilt or innocence as to result in the "fundamentally unjust incarceration" of one who is actually innocent. *Murray,* 106 S.Ct. at 2654.

The decision of the district court is AFFIRMED.